UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

JOSEPH M. GARUTI,
     Petitioner,

     v.                                  CIVIL ACTION NO.
                                              10-11473-FDS

GARY RODEN,
     Respondent.

**REPORT AND RECOMMENDATION RE:
RESPONDENT'S MEMORANDUM OF LAW
(DOCKET ENTRY # 18)[1]**

**August 24, 2012**

**BOWLER, U.S.M.J.**

Respondent Gary Roden, Superintendent of Massachusetts
Correctional Institute of Norfolk, Massachusetts ("MCI-Norfolk")
("respondent"), opposes issuance of the above styled petition for
writ of habeas corpus filed by petitioner Joseph M. Garuti
("petitioner"), an inmate of MCI-Norfolk.  Petitioner challenges
his March 14, 2006 conviction for first degree murder by reason
of extreme atrocity or cruelty rendered in Massachusetts Superior
Court (Plymouth County) ("the trial court") on the basis of
ineffective assistance of trial counsel ("trial counsel") because
trial counsel:  (1) failed to adequately consult with petitioner
regarding the case (ground one); (2) failed to properly prepare
petitioner to testify at trial (ground two); (3) failed to
properly advise petitioner regarding the strategic implications

---

[1] This court construes the memorandum, which concludes that the
"petition for a writ of habeas corpus should be dismissed," as a
motion.

of his decision about whether or not to testify at trial (ground three); (4) failed to properly cross examine two Massachusetts state troopers who interrogated petitioner after the incident regarding critical facts that trial counsel knew or should have known prior to trial (ground four); and (5) failed to provide petitioner with an affidavit to support a motion for a new trial filed by appellate counsel (ground five).

The petition also raises two additional claims. Ground six alleges a denial of petitioner's constitutional rights under the Fifth, Sixth and Fourteenth Amendments to testify at trial because he did not knowingly and intelligently waive his right to testify. In ground seven, petitioner contends that the trial court violated petitioner's right to due process under the Fourteenth Amendment by denying a motion for an evidentiary hearing.

In a June 10, 2009 opinion, the Massachusetts Supreme Judicial Court ("SJC") affirmed the decision of the trial court and rejected all of the ineffective assistance of trial counsel claims and the claims corresponding to grounds six and seven on the merits. Commonwealth v. Garuti, 907 N.E.2d 221, 228-233 (Mass. 2009). The petition does not identify whether it challenges the SJC's adjudication under 28 U.S.C. § 2254(d)(1) and/or 28 U.S.C. § 2254(d)(2). (Docket Entry # 1). The memorandum in support, however, clarifies that petitioner brings

all of the grounds for relief under both subsections. (Docket Entry # 14). In each section addressing the remaining grounds for relief, the section cites both subsection 2254(d)(1) and subsection 2254(d)(2) as a basis for relief. (Docket Entry # 14).

Respondent argues that petitioner's request for habeas relief must fail because the SJC's ruling on the ineffective assistance of counsel claims was neither contrary to nor an unreasonable application of clearly established Supreme Court precedent. Respondent also submits that the SJC did not base its decision on an unreasonable determination of the facts. With regard to ground six, respondent contends that the SJC correctly found that petitioner knowingly and intelligently waived his right to testify during a colloquy. Additionally, respondent argues that petitioner is not entitled to habeas relief on his state law claim with respect to ground seven because it is solely a matter of state law. (Docket Entry # 18).

<u>PROCEDURAL BACKGROUND</u>

On February 20, 2004, a grand jury sitting in Plymouth County returned a one count Indictment against petitioner charging him with murder in the first degree by reason of extreme atrocity or cruelty of his ex-wife Shirley Garuti ("the victim"). Trial commenced on March 9, 2006. At trial, trial counsel did not call petitioner or any other individuals as witnesses. Trial

counsel did, however, cross examine all of the Commonwealth's witnesses, including the two state troopers present during the incident and also during the subsequent questioning of petitioner. (Docket Entry # 9).

Petitioner waived his right to testify in a colloquy with the trial court. (Docket Entry # 9, pp. 1143-45). During the March 13, 2006 colloquy, petitioner stated that he was not under the influence of any drug and that he understood that the decision of whether or not to testify was his alone. (Docket Entry # 9, pp. 1143-45). Petitioner also informed the trial court that he was not being coerced or induced into waiving his right to testify. (Docket Entry # 9, pp. 1143-45).

On March 14, 2006, the jury returned a verdict of guilty on the charge of first degree murder. (Docket Entry # 9, p. 7). On March 16, 2006, petitioner filed a notice of appeal as well as a motion for withdrawal of trial counsel and appointment of new counsel. (Docket Entry # 9, p. 7). On March 13, 2008, the SJC remanded the motion for a new trial and the motion for an evidentiary hearing to the trial court. (Docket Entry # 9, p. 8). To support the motion for a new trial, appellate counsel sent a proposed affidavit to trial counsel asking him to sign or correct anything misleading or inaccurate. (Docket Entry # 9, p. 443). As stated by appellate counsel in an affidavit, trial counsel replied in writing, "'I am sorry but I cannot help you by

signing an affidavit because the contents of the affidavit are inaccurate.'" (Docket Entry # 9, p. 443). Appellate counsel was unable to elicit further response from trial counsel. (Docket Entry # 9, pp. 443-45). On May 12, 2008, the trial court denied the motion for a new trial without an evidentiary hearing, thus disposing of both motions. (Docket Entry # 9, pp. 8-9).

Petitioner timely appealed the denials of the new trial motion and the evidentiary hearing.[2] The SJC consolidated the direct appeal with the appeal of the denials of the new trial and evidentiary hearing motions. In a June 10, 2009 opinion, the SJC affirmed the decision of the trial court and rejected all of the ineffective assistance of trial counsel claims and the claims corresponding to grounds six and seven on the merits. Commonwealth v. Garuti, 907 N.E.2d at 228-233.

### FACTUAL BACKGROUND

The SJC summarized the facts as follows:

> The defendant had two children, Joseph, Jr. (Joey), and Sarah, who were twelve and ten years old, respectively, at the time of the murder. Visitation with his children was a source of tension between the defendant and the victim. A neighbor and a friend of the victim testified about the hostility the defendant exhibited toward the victim. From the time the couple separated in 1998, the defendant periodically made remarks about his wife, at times in front

---

[2] The trial court's docket fails to reflect the denial of the motion for an evidentiary hearing. (Docket Entry # 9, pp. 8-9); see Commonwealth v. Garuti, 907 N.E.2d at 229 n.4. The docket does reflect a notice of appeal for both motions. The parties do not dispute the trial court's denial of the motion for an evidentiary hearing.

of the children, calling her a "fucking cunt," "fucking bitch," "lesbian," and "dike." He threatened that he would "get her" and would take the children. He said she "would be sorry" and he would "shoot her." The neighbor testified that tension was so high that eight or nine times he supervised the visitation when the defendant came to pick up the children. A "couple of times" he walked the defendant out to his vehicle to calm him down in front of the children.

On the morning of February 16, 2004, the defendant went to pick his children up at the victim's house in Halifax. He parked his 1993 Ford Explorer Sport (SUV) in the driveway. The SUV was in good working order. Sarah went outside, and as she was placing certain items inside the SUV, the defendant asked her where the rest of her things were, as she and her brother were going to be spending the night with him. Sarah went inside to tell the victim. Joey then went outside, placed some items in the SUV, and went back inside the house to say goodbye to the family's dog.

The two children were inside the house while the victim went outside to talk to the defendant to tell him that an overnight stay was not part of their agreement. The couple argued. The conversation ended when the victim said that the defendant should not have the children at all because he was being irrational, and she walked away toward the house. The defendant "lost it" and put his SUV in gear, stepped on the gas pedal, and hit her. He then backed up over her. The victim's slacks had tire marks on them.

The children had heard tires screeching and ran outside. Sarah saw the defendant's SUV on top of the victim, as the vehicle backed up slowly. Joey testified that, although the victim was lying on the ground, the defendant was "just standing there." The defendant told Joey to go inside and dial 911. The defendant, who was a registered nurse, knew that the victim's injuries were severe, yet did nothing to help the victim while Joey was inside making the telephone call. When Joey came back outside, the defendant gave him a "CPR mask" that Joey placed on the victim's mouth and blew into until help arrived. The defendant did not assist Joey.

The town's fire chief was the first person to respond to the scene. He testified that there was no one at the house watching to signal him, and he drove past the house at first. When he drove into the driveway, the fire chief saw

the children, who were crying and extremely upset, with the victim.  Joey was trying to "perform rescue" on her.  The defendant was standing off to the side, leaning against his vehicle.  When asked by the fire chief what had happened, the defendant made clear that he did not hit the victim, but that he "ran her over."  Tire marks on the asphalt driveway indicated that the SUV had accelerated toward the victim, and there were scuff marks, where dirt, or some other substance, had been rubbed off and transferred to the bumper and hood of the vehicle.

The victim was still alive when she was taken from the scene, but was pronounced dead the next day.  The cause of death was blunt trauma to the head, intracranial bleeding, and extremity and skull fractures, including a fractured pelvis.  She also had a tear in her bladder.

In a statement he gave to state troopers the day of the incident, the defendant was asked why he did not help the victim.  He replied that he could not do it; he could not touch her.  He said that the victim hurt him "like the Nazis hurt the Jews" and that he would not walk across the street for her.  He stated that the victim was a sociopath who was controlling and manipulative.  He claimed that she antagonized him and was always degrading him and toying with people, and that he had kept in control of himself for fourteen years.

The defense was that this was an accident and that there was no proof that the defendant's vehicle actually struck the victim.  The defendant called no witnesses, but trial counsel elicited, though cross-examination of the Commonwealth's witnesses, that the defendant also told the police that, although he was very angry at his wife, he was trying to leave but the wheels of his SUV were turned to the right (i.e., toward the victim) when he accelerated; that the Commonwealth's accident reconstruction expert could not say where the point of impact, if any, was between the victim and the SUV; and that all abrasions on the victim were superficial and there were no broken bones, even though if an SUV ran over an individual's extremities, there would be some injuries to them.  He emphasized these points in closing argument.  He also attacked the credibility and memory of the Commonwealth's witnesses, stating that several of them, including police officials, were liars or were biased against the defendant.  He stated that all evidence against the defendant was from "questionable sources," and

that the scuff marks on the SUV were not visible on any
photographs.  He also contended that many people have
contentious divorces and it was not proof of murder.

Commonwealth v. Garuti, 907 N.E.2d at 224-26.

State Trooper Diana Lilly ("Trooper Lilly") testified at
trial that she and State Trooper Richard Scott Warmington
("Trooper Warmington") were at the scene of the incident and that
she questioned petitioner.  (Docket Entry # 9, pp. 905-31).
Trooper Lilly testified that she questioned petitioner after the
incident and after administering Miranda[3] warnings.  She
testified that when asked what happened, petitioner said that he
had snapped, "that he put the car into gear and hit the gas, ran
her down, and backed over her."  (Docket Entry # 9, p. 917).

STANDARD OF REVIEW

The Antiterrorism and Effective Death Penalty Act of 1996
("AEDPA"), 28 U.S.C. § 2254(d), governs these proceedings because
petitioner filed the petition after the statute's April 1996
effective date.  Subsection 2254(d)(1) establishes "two
categories of cases in which a state prisoner may obtain federal
habeas relief with respect to a claim adjudicated on the merits
in state court."  Williams v. Taylor, 529 U.S. 362, 404 (2000).
Under either prong, the record in federal court is limited to the
record before the state court that adjudicated the claim on the
merits.  See Cullen v. Pinholster, 131 S.Ct. 1388, 1398 (2011)

---

[3]  Miranda v. Arizona, 384 U.S. 436 (1966).

("hold[ing] that review under § 2254(d)(1) is limited to the record that was before the state court that adjudicated the claim on the merits"); <u>Brown v. O'Brien</u>, 666 F.3d 818, 822 & n.3 (1st Cir. 2012) ("[r]eview under the 'fact' prong [subsection 2254(d)(2)] is limited to "the record that was before [the] state court") (citing <u>Cullen</u>, 131 S.Ct. at 1400), <u>cert. denied</u>, 2012 WL 1379023 (June 25, 2012). As previously noted, petitioner seeks habeas relief under both subsections 2254(d)(1) and 2254(d)(2). This court respectively turns to these provisions.

Subsection 2254(d)(1), the "'law' prong," warrants federal habeas relief "when a state court adjudication resulted in a decision 'that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States.'" <u>Brown v. O'Brien</u>, 666 F.3d at 822 & n.3 (quoting subsection 2254(d)(1)). "[A] state court determination is 'contrary to' clearly established law if the court 'applies a rule that contradicts the governing law set forth' by the Supreme Court or 'confronts a set of facts that are materially indistinguishable from a decision of [the Supreme Court] and nevertheless arrives at a result different from [its] precedent.'" <u>Gomes v. Brady</u>, 564 F.3d 532, 534 (1st Cir. 2009); <u>accord</u> <u>Ramdass v. Angelone</u>, 530 U.S. 156, 165-166 (2000) (decision is contrary to "clearly established federal law if it applies a legal rule that contradicts" the "prior holdings" of

the Supreme Court or "reaches a different result from" a Supreme Court case "despite confronting indistinguishable facts"); Williams v. Taylor, 529 U.S. at 405-406 (same).

Under the second category the federal court may grant the writ if the relevant state court decision "'involved an unreasonable application of clearly established federal law, as determined by the Supreme Court of the United States.'" Williams v. Taylor, 529 U.S. at 404-405 (quoting statute with ellipses omitted).  An unreasonable application of clearly established federal law occurs if the state court "'correctly identifies the governing legal principles, but (i) applies those principles to the facts of the case in an objectively unreasonable manner; (ii) unreasonably extends clearly established legal principles to a new context where they should not apply; or (iii) unreasonably refuses to extend established principles to a new context where they should apply.'"  Gomes v. Brady, 564 F.3d at 537; see Foxworth v. St. Amand, 570 F.3d 414, 425 (1st Cir. 2009).

"'[C]learly established federal law'" refers to "'the holdings, as opposed to the dicta, of the Supreme Court's decisions at the time of the relevant state court decision.'" Yeboah-Sefah v. Ficco, 556 F.3d 53, 65 (1st Cir. 2009).  The inquiry is an objective one, see McCambridge v. Hall, 303 F.3d 24, 36 (1st Cir. 2002), insofar as the decision "must have been

'objectively unreasonable.'" <u>Wiggins v. Smith</u>, 539 U.S. 510, 520 (2003).

An objectively unreasonable application of the relevant jurisprudence differs from an incorrect or erroneous application of such jurisprudence. <u>Williams v. Taylor</u>, 529 U.S. at 365; <u>accord</u> <u>Wiggins v. Smith</u>, 539 U.S. at 520-521 ("state court's decision must have been more than incorrect or erroneous"). Under the unreasonable application prong, the "habeas court may not issue the writ simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly. Rather, that application must also be unreasonable." <u>Williams v. Taylor</u>, 529 U.S. at 365; <u>accord</u> <u>Schriro v. Landrigan</u>, 550 U.S. 465, 473 (2007) ("question under section 2254 is not whether a federal court believes that state court's determination was incorrect but whether that determination was unreasonable-a substantially higher threshold"). When "it is the state court's application of governing federal law that is challenged, the decision 'must be shown to be not only erroneous, but objectively unreasonable.'" <u>Waddington v. Sarausad</u>, 129 S.Ct. 823, 831 (2009); <u>accord</u> <u>Foxworth v. St. Amand</u>, 570 F.3d at 425 ("state court's decision is not vulnerable unless it evinces some increment of incorrectness beyond mere error").

Separate and apart from the subsection 2254(d)(1) challenge, petitioner seeks relief under subsection 2254(d)(2). For example, petitioner submits that the SJC's fact finding process resulted in a decision on the ineffective assistance of counsel claims "based on an unreasonable determination of the facts in light of the evidence" pursuant to subsection 2254(d)(2).[4]

Subsection 2254(d)(2) provides habeas relief if the petitioner shows that the state court decision "'was based on an unreasonable determination of the facts' in light of the record before it." Robidoux v. O'Brien, 643 F.3d 334, 338 (1st Cir. 2011) (quoting subsection 2254(d)(2)), cert. denied, 132 S.Ct. 866 (2011). A state court decision that was "based on a factual determination will not be overturned on factual grounds unless objectively unreasonable in light of the evidence presented in the state-court proceeding." Miller-El v. Cockrell, 537 U.S. 322, 324 (2003). A factual determination by a state court "is not unreasonable merely because the federal habeas court would have reached a different conclusion in the first instance." Wood v. Allen, 130 S.Ct. 841, 849 (2010).

The relevant inquiry is whether "the SJC's ineffective assistance of counsel analysis was based on an unreasonable determination of the facts in light of the evidence presented at

---

[4] The "flawed record" then resulted in an unreasonable application of clearly established law under subsection 2254(d)(1), according to petitioner.

trial." <u>Shuman v. Spencer</u>, 636 F.3d 24, 32 (1st Cir. 2011) (citing subsection 2254(d)(2)). For example, the Supreme Court in <u>Wood</u> concluded under subsection 2254(d)(2) review in the context of an ineffective assistance of counsel claim that "the state court's finding that Wood's counsel made a strategic decision not to pursue or present evidence of Wood's mental deficiencies was not an unreasonable determination of the facts in light of the evidence presented in the state-court proceedings." <u>Wood v. Allen</u>, 130 S.Ct. at 849.

When a petitioner brings a claim under both subsections 2254(d)(1) and 2254(d)(2), the subsection 2254(d)(1) analysis is dependent on the outcome of the subsection 2254(d)(2) analysis. <u>See</u> <u>Williams v. Taylor</u>, 529 U.S. 362, 386 (2000) (subsection 2254(d)(2) "provides the relevant context for our interpretation of [subsection] 2254(d)(1)"). For example, an ineffective assistance of counsel claim may depend on a factual determination that counsel engaged in a strategic decision under subsection 2254(d)(2). <u>See</u> <u>Wood v. Allen</u> 130 S.Ct. at 851. As explained in <u>Wood</u>, "Whether the state court reasonably determined that there was a strategic decision under [subsection] 2254(d)(2) is a different question from whether the strategic decision itself was a reasonable exercise of professional judgment under <u>Strickland</u> or whether the application of <u>Strickland</u> was reasonable under [subsection] 2254(d)(1)." <u>Id.</u> Subsection 2254(d)(2) therefore

13

provides "the starting point of [the] analysis [of the] state
courts' determinations of fact, including that aspect of a 'mixed
question' that rests on a finding of fact." <u>Williams v. Taylor</u>,
529 U.S. at 386. With these principles in mind, this court turns
to the grounds for habeas relief.

DISCUSSION

A. <u>Ground One</u>

Petitioner asserts he was denied effective assistance of
trial counsel in violation of the Sixth and Fourteenth
Amendments. (Docket Entry # 14). Petitioner claims that trial
counsel failed to properly consult with him before trial and as a
result failed to marshal the facts of the case in favor of
petitioner. (Docket Entry # 14). Petitioner argues that the
SJC's adjudication of his claims was an objectively unreasonable
application of <u>Strickland v. Washington</u>, 466 U.S. at 668, under
subsection 2254(d)(1) as well as an objectively unreasonable
determination of the facts under 2254(d)(2). (Docket Entry #
14). Respondent asserts that the SJC correctly deemed that the
performance of trial counsel was a reasonable application of
<u>Strickland</u> and a reasonable determination of the facts. (Docket
Entry # 18).

This court first turns to the challenge under subsection
2254(d)(2). Petitioner argues that, without "an affidavit from
trial counsel or an evidentiary hearing, the SJC and the trial

14

judge could never have had a legitimate factual basis for concluding with any acceptable degree of confidence that trial counsel adequately consulted with the Petitioner about the facts of his case."[5] (Docket Entry # 14, p. 12). Here, the SJC determined that a factual finding by the trial court "to discredit" assertions made by petitioner in an affidavit "as self-serving was proper."[6] (Docket Entry # 9, p. 517). The SJC identified one such assertion as "that [trial] counsel did not adequately consult with the defendant." (Docket Entry # 9, p. 517).

The SJC had before it the trial transcripts, the affidavit provided by petitioner and the proposed affidavit that trial counsel refused to sign. (Docket Entry # 9). Petitioner's affidavit states that he made numerous efforts to communicate with trial counsel by writing several lengthy and detailed letters and making several telephone calls to trial counsel's office before trial commenced. (Docket Entry # 9, pp. 309-11). Trial counsel responded only with a few letters that did not

---

[5] Except for the above, petitioner does not identify the specific findings of fact made by the trial court or the SJC that he challenges under subsection 2254(d)(2). The failure to identify the factual finding necessarily complicates the subsection 2254(d)(2) analysis.

[6] The trial court did not "credit the defendant's self-serving contentions." (Docket Entry # 9, p. 195).

address the facts of the case in detail, according to petitioner's affidavit.  (Docket Entry # 9, p. 310).

The trial court made the reasonable interpretation of fact that the assertion in the affidavit that trial counsel did not adequately consult with petitioner was self serving.  (Docket Entry # 9, p. 194).  Besides petitioner's affidavit, there is little, if any, evidence of a lack of adequate consultation or preparation.  (Docket Entry # 9).  Absent from the record is an affidavit from trial counsel which would corroborate petitioner's allegations.  (Docket Entry # 9).  Instead, trial counsel wrote to appellate counsel that the contents of the unsigned, proposed affidavit were inaccurate.[7]  (Docket Entry # 9).  Moreover, the transcripts show trial counsel to be a thorough advocate, who knew the facts and the law of the case he was trying.  (Docket Entry # 9).

The SJC likewise made a similarly reasonable finding that the trial court's decision to discredit the assertion in petitioner's affidavit relative to an inadequate consultation "as

_____

[7]  In pertinent part, the inaccurate affidavit, which the SJC had before it, stated that, "I did not consult with [petitioner] in any significant way regarding the anticipated testimony of most of the Commonwealth's witnesses"; "I did not review with [petitioner] the police reports"; "I visited [petitioner] on two or perhaps three occasions"; "I wrote a few relatively short letters to [petitioner] while he was held awaiting trial"; and the letters  I wrote did not address "in any degree of detail the facts of [petitioner's] case or my strategy for presenting [petitioner's] case to the jury."  (Docket Entry # 9, pp. 447-448).

self-serving" was proper.  (Docket Entry # 9, pp. 195, 311, 517).
The SJC had an adequate basis in the record to make this factual
finding.  The SJC examined trial counsel's cross examination of
Commonwealth's witnesses and determined that trial counsel was
able to elicit certain necessary information.  The SJC thereafter
made the factual finding that trial counsel's ability to elicit
such information showed that trial counsel adequately knew
petitioner's "side of the story."  (Docket Entry # 9, pp. 195 &
516).  The determination that trial counsel had adequately
consulted with petitioner was reasonable given inter alia the
facts evidencing trial counsel's sufficient knowledge of the
record.  The standard is not whether the federal court would have
reached a different factual finding.  Rather it is whether the
state court's factual finding was unreasonable.  See Waddington
v. Sarausad, 129 S.Ct. at 831.  Since neither the trial court's
nor the SJC's analysis was based on an objectively unreasonable
determination of the facts relative to trial counsel's
consultation with petitioner, there was no error under subsection
2254(d)(2).

    Accordingly, this court turns to the challenge under
subsection 2254(d)(1).  The SJC rejected the ineffective
assistance of trial counsel claim under the statutory standard of
section 33E applicable to appeals of first degree murder
convictions.  (Docket Entry # 9, p. 518).  The section 33E

standard is "more favorable to defendant than the federal
constitutional standard articulated by the Supreme Court in
Strickland." Knight v. Spencer, 447 F.3d 6, 10 (1st Cir. 2006);
accord Commonwealth v. Wright, 584 N.E.2d 621, 624 (Mass. 1992)
("statutory standard of § 33E is more favorable to a defendant
than is the constitutional standard for determining the
ineffectiveness of counsel"); see generally Commonwealth v.
Mello, 649 N.E.2d 1106, 1118 & n.16 (Mass. 1995) (noting that if
state ineffective counsel standard is met then federal standard
is met). This court therefore "presume[s] the federal law
adjudication [by the SJC] to be subsumed within the state law
adjudication" and therefore "'adjudicated on the merits' within
the meaning of § 2254." McCambridge v. Hall, 303 F.3d at 35.
This court thus turns to the unreasonable application prong of
subsection 2254(d) review.

The Supreme Court "recently reinforced the 'doubly'
deferential standard that applies to a state prisoner's claims in
a federal habeas petition that has unreasonably applied the
Strickland principles." Jewett v. Brady, 634 F.3d 67, 75 (1st
Cir. 2011) (quoting Harrington v. Richter, 131 S.Ct. 770, 788
(2011)). Under Strickland, the petitioner has the burden to show
by a preponderance of the evidence that: "(1) counsel's
performance fell below an objective standard of reasonableness,
and (2) there is a reasonable probability that, but for counsel's

18

error, the result of the proceedings would have been different."
Smullen v. United States, 94 F.3d 20, 23 (1st Cir. 1996); accord
Gonzalez-Soberal v. United States, 244 F.3d 273, 277 (1st Cir.
2001) (same).

Under the first prong, the petitioner must show that
"counsel made errors so serious that counsel was not functioning
as the 'counsel' guaranteed the defendant by the Sixth
Amendment."  Smulen v. United States, 94 F.3d at 23 (quoting
Strickland v. Washington, 466 U.S. at 687).  Under Strickland,
there is also "a strong presumption that counsel's conduct falls
within the wide range of reasonable professional assistance; that
is, the defendant must overcome the presumption that, under the
circumstances, the challenged action 'might be considered sound
trial strategy.'"  Id. at 689.  Consequently, the ineffective
assistance prong is satisfied "only where, given the facts known
at the time, counsel's 'choice was so patently unreasonable that
no competent attorney would have made it.'"  Knight v. Spencer,
447 F.3d at 15.

The second Strickland prong requires a showing that
"counsel's errors prejudiced the defense."  Gonzalez-Soberal v.
United States, 244 F.3d 273, 277 (1st Cir. 2001).  The proper
focus is on "the 'fundamental fairness of the proceeding.'"  Id.
at 278; accord Lockhard v. Fretwell, 506 U.S. 364, 372 (1993)
(prejudice prong focuses on "whether counsel's deficient

performance renders the result of the trial unreliable or the proceeding fundamentally unfair"). A "reasonable probability" is therefore "a probability sufficient to undermine confidence in the outcome." Knight v. Spencer, 447 F.3d at 15 (internal quotation marks omitted). The petitioner must show "that counsel's errors were so serious as to deprive the [petitioner] of a fair trial, a trial whose result is reliable." Strickland v. Washington, 466 U.S. at 687; see also Lockhart v. Fretwell, 506 U.S. 364, 372 (1993) ("[u]nreliability or unfairness does not result if the ineffectiveness of counsel does not deprive the defendant of any substantive or procedural right to which the law entitled him").

With respect to ground one, Strickland establishes that defense counsel has a duty "to consult with the defendant on important decisions." Strickland v. Washington, 466 U.S. at 688. Here, petitioner alleges that trial counsel disregarded his attempts to communicate his account of the incident. (Docket Entry # 1, pp. 5-6). More specifically, petitioner states that he tried to contact trial counsel before trial on numerous occasions and in the instances when petitioner was actually able to make contact, the consultations with trial counsel were "not of any great duration." (Docket Entry # 1, p. 6). As a result of the alleged lack of pretrial communication, petitioner argues that trial counsel was unaware of critical facts relating to

petitioner's case or he otherwise completely misunderstood the evidentiary value of critical facts relating to petitioner's case. (Docket Entry # 1, p. 6). Petitioner argues that this evidence could have raised reasonable doubt in the minds of jurors as to whether petitioner was guilty. (Docket Entry # 1, p. 6).

The record, however, shows that trial counsel laid out his theory of the case in his opening statement and vigorously cross examined the Commonwealth's witnesses. (Docket Entry # 9, p. 515). In doing so, he demonstrated sound preparation and adequate pretrial consultation with petitioner. (Docket Entry # 9, p. 515). Additionally, since this court has already determined previously that the SJC's factual determination regarding the adequacy of trial counsel's consultations with petitioner and trial counsel's familiarity with the events was not an unreasonable determination of the facts, it follows that the SJC's rejection of the inadequate consultation claim was not an unreasonable application of Strickland's ineffectiveness prong.

Moreover, any ineffectiveness in consulting with petitioner prior to trial was not prejudicial because trial counsel had a sufficient command of the historical facts to adequately cross examine the Commonwealth's witnesses. "[C]ounsel's errors were not so serious as to deprive the [petitioner' of a fair trial."

Strickland v. Washington, 466 U.S. at 687.  Hence, the SJC's
decision rejecting the ineffective assistance of trial counsel
claim in ground one was not an unreasonable application of
clearly established Supreme Court jurisprudence under Strickland
and its progeny.  Thus, ground one does not provide a basis for
habeas relief under subsection 2254(d)(1).

B.  Ground Two

     Petitioner argues that trial counsel did very little to
prepare petitioner to testify at trial.  (Docket Entry # 1, p.
9).  Petitioner acknowledges that he knew he had the right to
testify at trial and that he understood that it was entirely his
decision whether or not to testify.  (Docket Entry # 1, p. 10).
Respondent argues that the SJC properly deemed the decision not
to fully prepare petitioner for trial to be within the acceptable
range of conduct under Strickland and its progeny.  (Docket Entry
# 18).  Respondent also correctly asserts that the SJC's decision
on this claim does not constitute an unreasonable determination
of the facts.  (Docket Entry # 18).

     In order to prevail under subsection 2254(d)(2), petitioner
must demonstrate that the state court decision "'was based on an
unreasonable determination of the facts' in light of the record
before it."  Robidoux v. O'Brien, 643 F.3d at 338.  Petitioner's
claim under subsection 2254(d)(2) fails.  Petitioner submits that
the trial court and the SJC "could not possibly have had any idea

what trial counsel actually did or did not do to prepare the Petitioner to testify at his trial."  (Docket Entry # 14, p. 13). In other words, petitioner submits that the record before the trial court and the SJC was inadequate to make a factual determination about what trial counsel did or did not do to prepare petitioner to testify.[8]

Here, the SJC made an implicit factual determination that trial counsel made an adequate effort to prepare petitioner to testify.[9]  Commonwealth v. Garuti, 901 N.E.2d at 232.  In making this determination, the SJC had before it petitioner's affidavit wherein petitioner attests that trial counsel's "efforts to prepare me to testify at my trial were superficial or minimal at best."  (Docket Entry # 9, p. 311).  The affidavit, however,

_____

[8]  Petitioner again fails to identify the particular finding of fact by the SJC or the trial court that was unreasonable within the meaning of subsection 2254(d)(2).

[9]  The relevant portion of the opinion reads as follows:

> In his affidavit, the defendant admits that, both before and during trial, his counsel "emphatically told me his view of the risks I faced if I testified . . . that I was incapable of focusing on anything other than my troubled relationship with [my former wife] . . . he was afraid I would disparage [her] in front of the jury and blame her for my problems . . . and if I vilified [her] the jury would quickly return a guilty verdict."  The defendant has not shown how this advice is manifestly unreasonable, and *trial counsel's ability to form this opinion undermines the defendant's contention that he did not make an adequate effort to prepare the defendant to testify*.

Commonwealth v. Garuti, 907 N.E.2d at 232 (emphasis added).

provides excerpts of the conversations petitioner had with trial counsel. For example and as accurately set out by the SJC, the affidavit states that trial counsel, "emphatically told me his views of the risks I faced if I testified . . . that I was incapable of focusing on anything other than my troubled relationship with [the victim] . . . that he was afraid that I would disparage [the victim] in front of the jury and blame her for my problems . . . [and] that if I vilified [the victim], the jury would quickly return a guilty verdict." (Docket Entry # 9, pp. 312-313). These excerpts belie petitioner's assertion that the SJC could not "have had any idea what trial counsel actually did . . . to prepare the Petitioner to testify at his trial." (Docket Entry # 14, p. 13). The SJC also had the unsigned, proposed affidavit which trial counsel described as inaccurate.[10] Accordingly, the SJC's factual determinations that trial counsel made an adequate effort to prepare petitioner to testify was not unreasonable in light of the evidence before the court.

The trial court made a related factual determination to discredit petitioner's affidavit statement that trial counsel failed to thoroughly prepare petitioner to testify. (Docket Entry # 9, p. 195). The affidavit states, in pertinent part, that trial counsel "did little to prepare me to testify," "did

---

[10] The affidavit states that, "I did not extensively practice with [petitioner] his proposed testimony at trial." (Docket Entry # 9, p. 449).

not extensively practice my testimony" and his "efforts to prepare me to testify . . . were superficial or minimal." (Docket Entry # 9, pp. 311-312). Assuming that petitioner attacks the foregoing factual determination by the trial court, the determination was not unreasonable based on the evidence before the trial court. In addition, the affidavit contains other statements that support the trial court's determination. These statements reveal that trial counsel discussed the risks of testifying and petitioner's inability to focus on anything except his troubled relationship with the victim. Trial counsel also asked petitioner a few practice questions but did not conduct a full practice cross examination. (Docket Entry # 9, p. 312). The trial court's determination to discredit the affidavit statement that trial counsel failed to thoroughly prepare petitioner to testify was therefore a reasonable determination based on the evidence before it.

The evidence before the trial court also included the unsigned, proposed affidavit for trial counsel. The unsigned, proposed affidavit states inter alia that trial counsel did not review "what [petitioner's] proposed testimony would be on direct examination" and "did not extensively practice with [petitioner] his proposed testimony." (Docket Entry # 9, pp. 449-450). The evidence before the trial court also included trial counsel's characterization of the proposed affidavit as inaccurate. This

evidence likewise supports the foregoing factual determinations by the trial court and the SJC.  In sum, the factual determinations relative to ground two by the trial court and the SJC were not unreasonable in light of the evidence before these courts.  Subsection 2254(d)(2) therefore provides petitioner no relief with respect to ground two.

Turning to subsection 2254(d)(1), the SJC's decision affirming the trial court's decision that trial counsel rendered effective performance in preparing petitioner to testify under the circumstances was not an unreasonable application of Strickland's first prong.  Strickland instructs that, "If there is more than one plausible line of defense . . . counsel should ideally investigate each line substantially before making a strategic choice about which lines to rely on at trial." Strickland, 466 U.S. at 681.  "[S]trategic choices," however, "made after thorough investigation of law and facts relevant to plausible options are virtually unchallengeable." Id.; see also Harrington v. Richter, 131 S.Ct. at 779 ("rare are the situations in which the latitude counsel enjoys will be limited to any one technique or approach").

Petitioner admitted in the affidavit that trial counsel informed petitioner that his testifying would negatively characterize petitioner before the jury.  (Docket Entry # 9, p. 167).  In his own affidavit, petitioner eludes to the fact that

he had an acrimonious relationship with the victim, his wife.
(Docket Entry # 9, pp. 138-38, 143, 155, 281-282). Furthermore,
trial counsel noted petitioner was "incapable of focusing on
anything other than the troubled relationship with [the victim]"
and that he was concerned that "if petitioner vilified [the
victim], the jury would quickly return a guilty verdict."
(Docket Entry # 9, p. 182). Accordingly, trial counsel's
decision conforms to the reasonable theory that trial counsel
made a strategic decision that it was unwise for petitioner to
testify. This reasonable decision, in turn, supports a more
truncated preparation of petitioner to testify.

Moreover, petitioner waived his right to testify in a
colloquy with the trial court. (Docket Entry # 9). Trial
counsel's reasonable strategy did not call for defendant to
testify and he therefore had no reason to engage in an elaborate
and extended preparation of petitioner to testify. Hence, the
SJC's decision that trial counsel did not render ineffective
performance in preparing petitioner to testify was not an
objectively unreasonable application of Strickland. Because the
SJC's decision affirming the trial court's rejection of the claim
was not an unreasonable application of clearly established law
under Strickland and its progeny, ground two fails to provide
relief under subsection 2254(d)(1).

C. Ground Three

Petitioner next argues that trial counsel failed to adequately advise him with respect to testifying in his own defense. (Docket Entry # 14). In ground three, petitioner submits that trial counsel failed to explain the strategic implications of testifying versus not testifying and that while trial counsel explained to petitioner the risks of testifying, counsel did not explain the benefits of testifying. (Docket Entry # 1, pp. 10-11). Petitioner thus maintains that trial counsel's failure to adequately explain the benefits of testifying as contrasted with the risks effectively rendered petitioner incapable of making a knowing and intelligent decision about whether or not to testify. (Docket Entry # 1, p. 10).

Respondent contends that the SJC reasonably applied Strickland by concluding that trial counsel properly apprised petitioner of his options and did not deprive petitioner of his right to testify. (Docket Entry # 18). Respondent also argues that the SJC's adjudication of this ground does not constitute an unreasonable determination of the facts under subsection 2254(d)(2). (Docket Entry # 18).

Petitioner's challenge under subsection 2254(d)(2) again fails to provide relief. The SJC affirmed as "proper" the trial court's rejection of petitioner's contention "that trial counsel did not prepare [petitioner] thoroughly before and during trial relative to all issues, including his right to testify." (Docket

Entry # 9, p. 517).  The trial court, in turn, made a factual
determination to discredit petitioner's affidavit statement that
trial counsel failed to thoroughly prepare petitioner to testify
at trial.  (Docket Entry # 9, pp. 195 & 314).  As with ground
two, petitioner challenges the SJC's and the trial court's
factual determinations because the courts "could not possibly
have had any idea what trial counsel actually did or did not do
to prepare petitioner to testify at his trial or to explain to
him the strategic implications of his decision whether or not to
testify at trial."  (Docket Entry # 14).

     As previously explained, the SJC's factual determination is
supported by the record.  (Docket Entry # 9).  The evidence in
the record included petitioner's colloquy with the trial court
regarding petitioner's decision not to testify.  During the
colloquy, petitioner confirmed that he had consulted with trial
counsel to "some degree."  (Docket Entry # 9, p. 1144).  The
trial court then called a recess to allow petitioner additional
time to consult with trial counsel about the decision.  When
court reconvened, petitioner agreed he had "had enough time now"
to consult with trial counsel.  (Docket Entry # 9, p. 1145).
Petitioner also agreed he had "freely discussed" the issue with
trial counsel and that he accepted trial counsel's advice.
(Docket Entry # 9, p. 1146).

The record additionally includes trial counsel's letter to appellate counsel that characterizes the unsigned, proposed affidavit as inaccurate. (Docket Entry # 9, p. 176). The unsigned, proposed affidavit for trial counsel states that, "I did not explain to [petitioner] the potential benefits to him of testifying at his trial." (Docket Entry # 9, p. 450). Trial counsel's description of the contents of the affidavit as inaccurate thus provides further support for the SJC's and trial court's factual determinations vis-à-vis the adequacy of petitioner's consultation with trial counsel about the right to testify. Moreover, in petitioner's affidavit, he acknowledges that he was aware of trial counsel's assessment of the significant risk in offering testimony. (Docket Entry # 9, p. 167).

The SJC's factual finding that trial counsel focused on the serious risks of having petitioner testify was likewise well founded in the record. (Docket Entry # 9). Although petitioner points out that trial counsel never explained that the jury would not hear the facts in petitioner's affidavit without petitioner taking the stand, the facts in the affidavit include petitioner's disparaging references to the victim (Docket Entry # 9, pp. 136-38, 143, 155). There was also trial testimony regarding petitioner's behavior in public disputes with the victim which demonstrated petitioner's disdain for the victim (Docket Entry #

9, pp. 1066-76) and the police noted petitioner's hostility towards the victim during his interview at the police station (Docket Entry # 9, pp. 913-19, 960-62). Given petitioner's repeated demonstrations of animosity towards the victim in the record, the SJC drew the reasonable finding that trial counsel believed petitioner would focus on his relationship with the victim and the disdain he harbored for her if he took the stand. In light of the above evidence before the SJC, the SJC's factual finding has ample support in the record. In sum, there was sufficient support in the record for the SJC and the trial court to make the aforementioned factual determinations. Consequently, such determinations were not an unreasonable determination of the facts in light of the record. Ground three therefore fails to provide relief under subsection 2254(d)(2).

Subsection 2254(d)(1) also provides no relief to petitioner. Trial counsel's choice to advise petitioner against testifying at trial was not an unreasonable application of the ineffectiveness Strickland prong. Petitioner contends that trial counsel's failure to adequately explain the benefits of testifying effectively rendered petitioner incapable of making a knowing and intelligent decision about whether or not to testify. (Docket Entry # 18, p. 18). It was well within reason for the SJC to conclude that given petitioner's demonstrated animosity towards the victim, trial counsel made a valid, strategic decision to

stress the risks of petitioner testifying over the benefits.

Such a reasonable and strategic decision does not constitute an

incorrect and unreasonable application of <u>Strickland</u>'s first

prong.

Moreover, as previously discussed, the SJC made a reasonable

factual determination that trial counsel recognized the real risk

of petitioner focusing on his relationship with the victim if he

took the stand.  In light of the totality of the circumstances of

this case, it was not objectively unreasonable for the SJC to

decide that trial counsel rendered effective performance in

focusing on the risks in the course of addressing and advising

petitioner about whether he should testify.

Petitioner likewise fails to show that the SJC's application

of the second prong of <u>Strickland</u> was unreasonable.  Petitioner

admitted in his own affidavit that he understood trial counsel's

assessment of the significant risk of petitioner testifying.

(Docket Entry # 9, p. 167).  Further, petitioner admitted in a

colloquy with the trial court that he waived his right to testify

without any coercion from others and that he understood that the

decision to testify was his alone.  (Docket Entry # 9, pp. 1143-

45).  Based on petitioner's knowledge of trial counsel's

determination and petitioner's colloquy with the trial court, it

is unlikely that petitioner would have decided to testify if

advised that the jury would not otherwise hear his side of the

story.  Trial counsel's failure, if any, to advise petitioner
that they jury would not hear his story did not deprive
petitioner of a fair trial having a reliable result.  The SJC's
rejection of the claim therefore falls significantly short of an
unreasonable application of <u>Strickland</u>'s prejudice prong.
Accordingly, no habeas relief is available to petitioner on
ground three under subsection 2254(d)(1).

D.  <u>Ground Four</u>

     Petitioner next challenges the SJC's decision under
subsection 2254(d) to reject the ineffective assistance claim
that trial counsel did not properly cross examine state troopers
Lilly and Warmington regarding matters critical to the case.
(Docket Entry # 14).  Specifically, petitioner claims that trial
counsel failed to properly impeach certain testimony by Troopers
Lilly and Warmington.  (Docket Entry # 1, pp. 12-18).  Petitioner
argues that if trial counsel had adequately cross examined the
troopers, he would have been able to elicit favorable testimony
or at least neutralize adverse testimony from the troopers.
(Docket Entry # 1, p. 12).  He thus asserts that the SJC
unreasonably determined the facts, which resulted in a violation
of subsection 2254(d)(2), and unreasonably applied Supreme Court
precedent, which violated subsection 2254(d)(1).  (Docket Entry #
14).

Subsection 2254(d)(2) does not provide habeas relief under ground four. Petitioner challenges the trial court's "factual determination that the troopers did not abuse the Petitioner during the interrogation" at the police station. (Docket Entry # 14, p. 11). Petitioner's 217 paragraph affidavit includes the averment that, "Trooper Warmington was outright abusive to [him] during the interrogation." (Docket Entry # 9, p. 307). The affidavit also recounts Trooper Warmington screaming and yelling at petitioner during the unrecorded interrogation. (Docket Entry # 9, pp. 305-306). Petitioner's memorandum in support of the motion for a new trial asserts that trial counsel "failed to elicit any testimony concerning this abusive interrogation tactic." (Docket Entry # 9, p. 111). The trial court discredited petitioner's contentions and denied the motion. (Docket Entry # 9, p. 195). The SJC found that the trial "judge did not abuse her discretion in discrediting the defendant's 'bald assertion' that the Troopers 'engaged in abusive interrogation techniques.'" (Docket Entry # 9, p. 516).

The SJC's and the trial court's factual determinations are supported by the record. In any event, petitioner states that the "constitutional claim is *not* whether the troopers were abusive to" petitioner. (Docket Entry # 14, p. 11) (emphasis added). "The dispositive issue" is "whether trial counsel sufficiently consulted with the Petitioner in order to fully

understand the Petitioner's version of what actually happened during the interrogation." (Docket Entry # 14, p. 11). The trial court discredited the assertion that trial counsel failed to consult with petitioner before trial "relative to all issues." (Docket Entry # 9, p. 195). Trial counsel's cross examination of the troopers supports this factual determination. Trial counsel cross examined the troopers seeking to discredit their testimony about the crime scene as well as their questioning of petitioner. (Docket Entry # 9, pp. 932-45, 962-66). According to the trial transcript, which the SJC had before it, trial counsel asked questions during cross examination which questioned the troopers' ability to recall and document events. (Docket Entry # 9, pp. 932-45, 962-66). Trial counsel also elicited from Trooper Warmington that he was only with petitioner for five to seven minutes and took no notes. (Docket Entry # 9, p. 962). The cross examinations of both troopers was in the record before the trial court when it denied the new trial motion and the SJC when it affirmed the conviction. The quality of the cross examinations evidences a sufficient command of the facts relative to the interrogation thereby supporting the factual determination discrediting the failure to consult with petitioner on the issue.

Finally, as previously discussed in ground one, the trial court's determination to discredit the failure to consult with petitioner survives subsection 2254(d)(2) review. In sum, the

35

decisions by the trial court and the SJC were not based on an unreasonable determination of the facts petitioner challenges in light of the evidence before both courts.  As to ground four, subsection 2254(d)(2) does not provide relief.

Habeas relief is also unavailable under subsection 2254(d)(1).  The decision to cross examine Trooper Lilly and Trooper Warmington about certain elements of their testimony and not others falls within "the wide range of reasonable professional assistance" that is constitutionally appropriate. See Strickland, 466 U.S. at 669.  Trial counsel succeeded in calling into question the troopers' ability to properly document and remember events, albeit in a slightly different manner than petitioner erroneously alleges was necessary for a constitutionally adequate defense.  (Docket Entry # 9, pp. 932-45, 962-66).  He emphasized the troopers' failure to record the interrogation and Trooper Lilly's extensive reliance on notes. (Docket Entry # 9, p. 936).

The Supreme Court in Bell as well as in Strickland recognize that, "'Judicial scrutiny of a counsel's performance'" is "'highly deferential'" and "a defendant must overcome the 'presumption that, under the circumstances, the challenged action "might be considered sound trial strategy."'"  Bell v. Cone, 535 U.S. 685, 698 (2002) (quoting Strickland v. Washington, 466 U.S. at 689) (internal brackets omitted).  "Decisions about whether to

36

engage in cross-examination, and if so to what extent and in what manner, are strategic in nature and generally will not support an ineffective assistance claim." <u>Dunham v. Travis</u>, 313 F.3d 724, 732 (2nd Cir. 2002) (quotation marks and ellipses omitted).

The cross examination of both troopers and trial counsel's voir dire of Trooper Lilly evidences a sufficient command of the facts about the interrogation at the police station. During the voir dire examination, trial counsel elicited information about petitioner placing his head in his hands during the interrogation and his reason for having his son perform the CPR due to the victim's head position even though Trooper Lilly did not address these facts during the prior voir dire by the trial court. (Docket Entry # 9, pp. 206-207).

In sum, it was not objectively unreasonable for the SJC to decide that trial counsel rendered effective performance despite petitioner's assertions to the contrary. Trial counsel had a sufficient command of the facts including the interrogation. There is little to show that he was not prepared for trial or had not adequately consulted with petitioner. His decisions to focus on the unrecorded nature of the interrogation and attack the troopers' memories of the interview fall comfortably within the range of effective performance. Petitioner therefore fails to show that the SJC unreasonably applied the first prong of <u>Strickland</u>.

Petitioner also fails to show that the SJC's application of the second prong of Strickland was unreasonable. Petitioner argues that trial counsel failed to elicit certain information during cross examination and that this error deprived him of a fair trial. (Docket Entry # 1, pp. 27-33). For example, petitioner asserts that Trooper Lilly testified that petitioner stated during questioning, "I ran [the victim] down and then I backed over her again." (Docket Entry # 1, p. 27). Petitioner maintains that he never made the statement to Trooper Lilly during the interrogation or at any time during that day. (Docket Entry # 1, p. 27). Petitioner therefore argues that trial counsel asked only one question about this "critical subject" and did not adequately address the issue during cross examination. (Docket Entry # 1, p. 27). Petitioner lists several other "facts" which trial counsel failed to elicit from the troopers during cross examination. (Docket Entry # 1, pp. 27-33).

Even if trial counsel elicited these facts or consulted with petitioner to a greater degree, the evidence against petitioner was undeniably strong. Thus, even if the jury had heard petitioner's side of the story in greater detail or the troopers had been cross examined in the manner petitioner identifies (Docket Entry # 1, pp. 27-33), it is unlikely that the result of the trial would have been different. Thus, trial counsel's failure to cross examine the troopers in the manner in which

petitioner deems appropriate did not deprive petitioner of a fair
trial.  Petitioner fails to demonstrate that the SJC's
application of the prejudice prong of <u>Strickland</u> was an
objectively unreasonable application of clearly established
Supreme Court law.  Accordingly, ground four does not warrant
habeas relief under subsection 2254(d)(1).

E.   <u>Ground Five</u>

Petitioner next argues that trial counsel was ineffective
for refusing to provide petitioner with an affidavit to support
the motion for a new trial.  (Docket Entry # 14).  Petitioner
argues that the SJC's finding of fact was unreasonable under
subsection 2254(d)(2) because "[t]he SJC agreed with the trial
court that it was 'pure speculation' that trial counsel's
affidavit would have been helpful."  (Docket Entry # 14, p. 9).
Petitioner maintains that the reliance by the trial court and the
SJC on trial counsel's description of the unsigned, proposed
affidavit as "'inaccurate'" was unreasonable because the "courts
had absolutely no idea what specific representations in the
proposed affidavit were inaccurate."  (Docket Entry # 14, p. 9).

The unsigned, proposed affidavit is a relatively brief
document spanning five pages followed by a signature page.  Trial
counsel states that he refused to sign "'the affidavit because
the contents of the affidavit are inaccurate.'"  (Docket Entry #
9, p. 443).  Trial counsel's failure to identify particular

paragraphs or representations as inaccurate does not make the trial court's or the SJC's reliance on trial counsel's representation of the entire affidavit unreasonable. The brevity of the affidavit coupled with trial counsel's unequivocal rejection of the entire "'contents'" as "'inaccurate'" avoids any finding that the trial court's or the SJC's decisions were based on an objectively unreasonable determination of the facts. The SJC's agreement with the trial court's finding that it was speculative to assume the affidavit would help petitioner is not an objectively unreasonable determination based on the record before each court. Accordingly, ground five does not warrant habeas relief under subsection 2254(d)(2).

Petitioner next argues that the SJC unreasonably applied clearly established law in <u>Strickland</u> because the state courts refused "to credit the facts alleged in the Petitioner's own affidavit based . . . upon the absence of an affidavit from trial counsel" even though "the SJC is saying that trial counsel has no duty to provide such an affidavit." (Docket Entry # 14). Respondent argues that the SJC correctly determined that trial counsel had no obligation to provide the affidavit and alternatively that its absence is not sufficient to prejudice petitioner. (Docket Entry # 18).

"'Clearly established Federal law' refers to the holdings of the Supreme Court's decisions." <u>Shuman v. Spencer</u>, 636 F.3d 24,

30 (1st Cir. 2011).  Such law does not impose an obligation on trial counsel to furnish an affidavit to support a post trial motion for a new trial filed by his former client.  Trial counsel did not render ineffective performance by refusing to supply an affidavit.  Indeed, trial counsel's description of the unsigned, proposed affidavit as "'inaccurate'" indicates that an affidavit by trial counsel might not have favored petitioner.  In any event, the failure to supply an affidavit was not a serious error or one outside the realm of "reasonable professional assistance." Strickland v. Washington, 466 U.S. at 689.  The SJC therefore correctly determined that trial counsel's failure to provide an affidavit to support the new trial motion did not constitute ineffective assistance of trial counsel.  Accordingly, the decision was not contrary to or an unreasonable application of clearly established law as determined in Strickland.

Petitioner also fails to demonstrate that the SJC's decision was an unreasonable application of the prejudice prong of Strickland.  There is no indication that, but for the failure to supply the affidavit, the result of the new trial motion would have been different.  Petitioner is therefore not entitled to relief on this ground under subsection 2254(d)(1).

F.  Ground Six

In ground six, petitioner claims he was denied his right to testify at trial in violation of the Fifth, Sixth, and Fourteenth

Amendments because he did not knowingly and intelligently waive his right to testify. (Docket Entry # 1, pp. 35-37). Petitioner maintains that trial counsel's failure to properly advise petitioner of the strategic implications of his decision not to testify deprived petitioner of his ability to intelligently make a decision to waive his right to testify. (Docket Entry # 14). The SJC determined that the record supported the trial court's finding that petitioner's "waiver of his right to testify was knowing and intelligent." (Docket Entry # 9, p. 517). Petitioner submits that the SJC's decision was an unreasonable application of clearly established Supreme Court precedent under subsection 2254(d)(1) as well as an unreasonable determination of the facts in light of the evidence presented under subsection 2254(d)(2). (Docket Entry ## 1 & 14).

With respect to subsection 2254(d)(2), petitioner argues that without an affidavit or evidentiary hearing, the trial court and the SJC could not reasonably find his decision was a knowing and intelligent one. (Docket Entry # 14, p. 14). The evidence before the trial court and the SJC, however, included the colloquy between petitioner and the trial court. During the colloquy, petitioner stated that his waiver was not coerced, induced or influenced by medication, alcohol or mental defect. (Docket Entry # 9, pp. 1142-46). The SJC's finding that the record supported the trial court's conclusion that petitioner

knowingly and intelligently waived his right to testify was based
directly on petitioner's own statements to this effect.  As such,
SJC's determination was a reasonable determination of the facts
in light of the evidence.  Consequently, habeas relief is not
available under subsection 2254(d)(2).

Subsection 2254(d)(1) also fails to warrant habeas relief.
Clearly established Supreme Court law dictates that a defendant
has a fundamental right to testify in his own behalf under the
Fifth, Sixth and Fourteenth Amendments.  Rock v. Arkansas, 483
U.S. 44, 52-53 & n.10 (1987).  The majority of circuit courts
further conclude that the waiver of the right to testify must be
knowing and voluntary.  See Goff v. Bagley, 601 F.3d 445, 471
(6th Cir. 2010) ("right of a defendant to testify at trial is a
constitutional right of fundamental dimension and is subject only
to a knowing and voluntary waiver by the defendant"); Berkovitz
v. Minnesota, 505 F.3d 827, 828 (8th Cir. 2007) ("[o]nly the
defendant may waive her right to testify, and the waiver must be
made voluntarily and knowingly"); Bower v. Quarterman, 497 F.3d
459, 473 (5th Cir. 2007) ("only the defendant can waive [the
right to testify], voluntarily and knowingly"); U.S. v.
Manjarrez, 258 F.3d 618, 623 (7th Cir. 2001) ("because the
defendant's right to testify is a fundamental constitutional
right . . . , the defendant's waiver of the right must be knowing
and intelligent"); Harvey v. Shillinger, 76 F.3d 1528, 1536 (10th

Cir. 1996) (waiver of the right to testify in one's own defense must be voluntary, knowing, and intelligent"); U.S. v. Pennycooke, 65 F.3d 9, 11 (3rd Cir. 1995) ("a defendant's waiver of the right to testify must be knowing and intelligent").

Although the Supreme Court "never has held that a trial court must engage in a personal colloquy with a defendant to determine whether he wishes to testify," Arredondo v. Huibregtse, 542 F.3d 1155, 1165 (7th Cir. 2008), here the trial court conducted a thorough colloquy with petitioner. At trial, petitioner confirmed during the colloquy with the trial court that he had "freely discussed" the matter with trial counsel and that he made the decision not to testify without being "forced or pressured into making that decision in any way." (Docket Entry # 9, pp. 1143-44). The trial court explained to petitioner that "the decision not to testify is yours and yours alone." (Docket Entry # 9, p. 1143). Petitioner consulted with trial counsel again before making a final decision to waive his right to testify. (Docket Entry # 9, pp. 1144-45). In light of the above, neither the trial court nor the SJC applied a rule contrary to the foregoing clearly established law. Given the thorough colloquy, the decisions by the trial court and the SJC did not constitute unreasonable applications of such clearly established federal law as determined by the Supreme Court.

Ground six therefore does not provide habeas relief under subsection 2254(d)(1).

G. Ground Seven

Petitioner next argues that when the SJC upheld the trial court's denial of petitioner's motion for a new trial without an evidentiary hearing, it violated his right to due process under the Fourteenth Amendment. (Docket Entry # 14). Petitioner asserts that the SJC's adjudication on this claim was an objectively unreasonably application of the law under subsection 2254(d)(1) and an objectively unreasonable determination of the facts under subsection 2254(d)(2). (Docket Entry # 14). Respondent maintains that the issue is one of state law and otherwise fails to rise to the level of a due process violation.

The motion for an evidentiary hearing sought a hearing under Rule 30(c)(3), Mass. R. Crim. P. ("Rule 30(c)(3)"). (Docket Entry # 9, p. 171). Rule 30(c)(3) allows the moving party filing a motion for a new trial to file an affidavit. Here, petitioner filed the 217 paragraph affidavit spanning 35 pages. Rule 30(c)(3) then allows the motion judge to rule on the new trial motion based on the facts in the affidavit without an evidentiary hearing "if no substantial issue is raised by the motion or" the affidavit. Rule 30(c)(3), Mass. R. Crim. P. The motion for an evidentiary hearing relies exclusively on state court cases discussing the Rule 30(c)(3) standard. (Docket Entry # 9, pp.

171-174).  The trial court denied the motion for a new trial

without conducting an evidentiary hearing and petitioner appealed

the denials of the new trial motion and the evidentiary hearing

motion to the SJC.

The SJC affirmed the trial court's denial of the motion for

an evidentiary hearing as follows:

> Given our conclusion that the judge did not err in denying
> the defendant's motion for a new trial, we conclude that she
> was warranted in not granting his motion for an evidentiary
> hearing on the motion.  Commonwealth v. Britto, 433 Mass.
> 596, 608, 744 N.E.2d 1089 (2001) (judge properly decided
> motion for new trial without evidentiary hearing where
> record supports that no substantial issues existed).

Commonwealth v. Garuti, 907 N.E.2d at 232.

It is well settled that section 2254(a) jurisdictionally

limits federal habeas relief to state convictions "in violation

of the Constitution or laws or treaties of the United States."

28 U.S.C. § 2254(a); see also 28 U.S.C. § 2241(c); Swarthout v.

Cooke, 131 S.Ct. 859, 861 (2011) ("'"federal habeas corpus relief

does not lie for errors of state law"'"); Brown v. O'Brien, 666

F.3d at 824 ("[o]rdinarily, errors of state law are not the basis

for federal habeas relief"); 1 James S. Liebman & Randy Hertz,

Federal Habeas Corpus Practice and Procedure § 9.1 (1998)

("jurisdictional prerequisite[] for federal habeas corpus review"

requires a claim that custody was imposed "'in violation of the

Constitution or laws or treaties of the United States'").  Errors

of state law that do not rise to the level of a constitutional

error "may not be corrected on federal habeas." <u>Gilmore v.</u>
<u>Taylor</u>, 508 U.S. 333, 348-349 (1993) (O'Connor, J. concurring);
<u>Sawyer v. Smith</u>, 497 U.S. 227, 239 (1990) ("availability of a
claim under state law does not of itself establish that a claim
was available under the United States Constitution"); <u>accord</u>
<u>Sanna v. DiPaolo</u>, 265 F.3d 1, 12-13 (1st Cir. 2001) (habeas
review unavailable for state law error except "extreme cases"
where state law or practice betrays "fundamental principle of
justice" under the Due Process Clause).  Accordingly, whether
petitioner met the standard under Rule 30(c)(3) to trigger an
evidentiary hearing is solely a matter of state law that is not
subject to federal habeas review.

It is nevertheless true that, "An erroneous evidentiary
ruling that results in a fundamentally unfair trial may
constitute a due process violation and thus provide a basis for
habeas relief." <u>Lyons v. Brady</u>, 666 F.3d 51, 55-56 (1st Cir.
2012).  The applicable standard, however, is very narrow.  <u>See</u>
<u>Coningford v. Rhode Island</u>, 640 F.3d 478, 484 (1st Cir. 2011)
(Supreme Court defines "the category of infractions that violate
'fundamental fairness' very narrowly").  Indeed, "the state
court's application of state law must be 'so arbitrary or
capricious as to constitute an independent due process
violation.'" <u>Lyons v. Brady</u>, 666 F.3d at 55-56 (quoting <u>Lewis v.</u>
<u>Jeffers</u>, 497 U.S. 764, 780 (1990), with internal ellipses

omitted).  Put another way, the evidentiary ruling under state
law "'must so infuse the trial with inflammatory prejudice that
it renders a fair trial impossible.'"  Lyons v. Brady, 666 F.3d
at 56 (quoting Petrillo v. O'Neill, 428 F.3d 41, 44 n.2 (1st Cir.
2005)).

As to subsection 2254(d)(2), petitioner's argument that the
trial court based the adjudication on a factual record that was
not "fully developed" ignores the existence of petitioner's 217
paragraph affidavit.  Trial counsel's disclaimer of the contents
of the unsigned, proposed affidavit as inaccurate along with
petitioner's affidavit that includes facts relative to his
discussions with trial counsel provide a constitutionally
sufficient basis for the trial court to rule on the motion for a
new trial without an evidentiary hearing and for the SJC to
affirm that ruling.  The adjudication of the claim by the trial
court and the SJC was not an unreasonable determination of the
facts because the courts had the aforementioned basis in the
record before them to reach their decisions.  The absence of an
evidentiary hearing in state court therefore does not render the
decisions unreasonable in light of the evidence before each
court.

Turning to subsection 2254(d)(1), see, e.g., Lyons v. Brady,
666 F.3d at 56 (paraphrasing subsection 2254(d)(1) standard by
noting that Lyons failed to show "any clearly established Supreme

Court precedent holding that the admission of autopsy photographs violates due process rights"), the decisions also did not result in objectively unreasonable determinations of Supreme Court precedent. The very narrow band of circumstances that rise to the level of a due process violation are egregious and impact fundamental constitutional rights. <u>See</u> <u>Lyons v. Brady</u>, 666 F.3d at 56 n.9.[11] Petitioner's challenge to the trial court's failure to hold an evidentiary hearing does not rise to this level. The trial court's failure to conduct an evidentiary hearing and the SJC's decision that the trial court did not commit an error fall significantly short of this standard.

## CONCLUSION

In accordance with the foregoing discussion, this court **RECOMMENDS**[12] that the petition for habeas corpus (Docket Entry #

---

[11]  The First Circuit in <u>Lyons</u> collected the following Supreme Court decisions as examples of the narrow "category of infractions that violate fundamental fairness":

> <u>Doyle v. Ohio</u>, 426 U.S. 610, 618, 96 S.Ct. 2240, 49 L.Ed.2d 91 (1976) (use of suspect's post-<u>Miranda</u> silence against him); <u>Blackledge v. Perry</u>, 417 U.S. 21, 27; 94 S.Ct. 2098, 40 L.Ed.2d 628 (1974) (vindictive prosecution); <u>Brady v. Maryland</u>, 373 U.S. 83, 87, 83 S.Ct. 1194, 10 L.Ed.2d 215 (1963) ("the suppression by the prosecution of evidence favorable to an accused upon request . . . where the evidence is material either to guilt or to punishment"); <u>Gideon v. Wainwright</u>, 372 U.S. 335, 342, 83 S.Ct. 792, 9 L.Ed.2d 799 (1963) (failure to appoint counsel in certain criminal cases).

<u>Lyons v. Brady</u>, 666 F.3d at 56 n.9.

[12]  Any objections to this Report and Recommendation must be filed with the Clerk of Court within 14 days of receipt of the Report

1) be **DENIED** and the motion to dismiss the petition (Docket Entry

# 18) be **ALLOWED.**


                              /s/ Marianne B. Bowler
                         **MARIANNE B. BOWLER**
                         United States Magistrate Judge

---

and Recommendation to which objection is made and the basis for
such objection.  Any party may respond to another party's
objections within 14 days after service of the objections.
Failure to file objections within the specified time waives the
right to appeal the order.